**WENOKUR RIORDAN, PLLC**
600 Stewart Street, #1300
Seattle, WA 98101
206-903-0401
Faye C. Rasch
faye@wrlawgroup.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| FLAGSHIP RESORT DEVELOPMENT CORPORATION, | Case No. 25-15047 (JNP) |
| Debtor. | Honorable Jerrold N. Poslusny, Jr. U.S.B.J. |
| In re: | |
| LAWSUIT PLAINTIFFS, | Adv. Pro. No. 25-01379-JNP |
| Plaintiffs, | |
| v. | |
| FLAGSHIP RESORT DEVELOPMENT CORPORATION, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF ENTRY OF ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS**

By way of abbreviated background, for purposes of the within Order to Show Cause, the Lawsuit Plaintiffs (as defined below) seek temporary restraints and a preliminary injunction staying the Debtor from closing the sale of its property to AC Boardwalk Investments LLC or its designee (the "Purchaser") through the fourteenth day following entry of an Order by the Court adjudicating the Lawsuit Plaintiffs' contemporaneously filed motion (the "Motion") for

(i) clarification of the Sale Order,[1] or in the alternative, (ii) reconsideration of the Sale Order. The Motion seeks a determination that the Purchaser's interests in any consumer credit transactions or consumer credit contracts acquired in connection with the Sale Order are subject to 11 U.S.C. § 363(o).

## STATEMENT OF FACTS

### A. THE LAWSUIT PLAINTIFFS

1. The Lawsuit Plaintiffs are comprised of three groups of timeshare owners as follows: (i) the 19 plaintiffs in the *Keona Palmer, et al, vs. Flagship Resort Development Corporation*, Docket No. ATL-1515-19 ("Palmer Plaintiffs"), (ii) the 17 plaintiffs in the *Alicia Castellanos vs. Flagship Resort Development Corporation*, Docket No. ATL-L-379-23 ("Castellanos Plaintiffs"), and (iii) the over 10,700 plaintiff class members who have been certified as a class in the *Michael Lantych, Sherman and Dorothy Norman v. Flagship Resort Development Corporation*, Docket No. ATL-L-744-23 ("Lantych Plaintiffs"), collectively referred to herein as the ("Lawsuit Plaintiffs").

### B. THE DEBTOR'S BANKRUPTCY CASE
#### i. The Filing of the Bankruptcy Case

2. On May 10, 2025 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief pursuant to chapter 11 the Bankruptcy Code thereby commencing this bankruptcy case (the "Bankruptcy Case").

#### ii. Appointment of Committee

3. On May 30, 2025, the UST appointed the UCC, which was comprised of the following members: (i) Flagship Condominium Association, Inc., (ii) Royal Suites Interval

---

[1] The Sale Order means the Order entered by the Court on August 11, 2025 at ECF 279.

Owners Association, Inc., and (iii) the Lantych Plaintiffs. *See* Docket No. 86. On July 1, 2025 and July 2, 2025, the Court entered Orders approving the Committee's retention of Cole Schotz P.C. as its counsel and IslandDundon, LLC as its financial advisor. *See* Docket Nos. 172 and 178.

### iii. The Sale

4. Shortly after the Petition Date, on May 12, 2025, the Debtor filed the Debtor's Motion For Entry of Orders (I)(A) Approving Bidding Procedures For the Sale of Substantially All of the Debtor's Assets, (B) Approving Stalking Horse Purchase Agreement, (C) Scheduling an Auction and a Sale Hearing, (D) Approving the Form and Manner of Notice Thereof, (E) Establishing Notice and Procedures For the Assumption and Assignment of Contracts and Leases; and (F) Granting Related Relief and (II)(A) Authorizing the Debtor to Enter into an Asset Purchase Agreement, (B) Approving the Asset Purchase Agreement, and (C) Authorizing The Assumption and Assignment of the Assumed Contracts [Docket No. 13], pursuant to which the Debtor sought approval of (i) bidding procedures (the "Bidding Procedures") in connection with the sale of substantially all of the Debtor's assets (the "Sale Transaction") and (ii) the designation of AC Boardwalk Investments, LLC (the "Stalking Horse Bidder") as the stalking horse bidder.

5. Following appointment, the UCC engaged in an active process with the Debtors regarding both the proposed sale and plan. These discussions and negotiations resulted in a settlement between the parties, which, among other things, required Kevin Jones, Roxanne Passarella, and the Management Companies (as defined in the settlement agreement) to contribute a total of $150,000.00 in cash to the Plan Administrator Wind-Down and Expense Reserve. *See* Docket No. 268, Settlement Term Sheet at ¶ 7.

6. While the Lawsuit Plaintiffs were initially hopeful that a non-insider sale could be consummated, ultimately the insider transaction was the only option for a sale. While the Lawsuit Plaintiffs did not believe that standing in the way of the sale would be fruitful, they had concerns

about the transaction. These concerns lead to the Lantych Plaintiffs resigning from the UCC and advising the Court, at the Sale hearing, that they had resigned and reserved all rights.

7. A sale hearing was held on August 5, 2025, and on or about August 11, 2025, the Court entered the Sale Order.

8. Upon information and belief, as of the filing of this Motion, the sale has not yet closed. In fact, the Debtor's represented to the Court during the confirmation hearing that the Debtor is awaiting certain licenses to facilitate the closing.

### iv. The Motion to Clarify the Sale Order.

9. Contemporaneously herewith, the Lawsuit Plaintiffs filed the Motion to Clarify the Sale Order in the Bankruptcy Case, which seeks limited and specific relief to clarify or modify the Sale Order to address any conflict with the plain language of section 363(o) of the Bankruptcy Code.

10. As explained in the Motion to Clarify the Sale Order, the Sale Order, as entered, includes express language making the Sale Transaction free and clear of liabilities pursuant to section 363(f) of the Bankruptcy Code; however, the Sale Order fails to expressly reference Section 363(o) of the Bankruptcy Code.

11. Section 363(o) dictates that notwithstanding the sale of property under section 363(f), a consumer credit transaction claim or defense is not affected by a sale order. While Section 363(o), by operation of law, is self-effectuating, the Sale Order omits specific reference to this statutory safeguard. Thus, to ensure compliance with the Bankruptcy Code and avoid unintended prejudice going forward, the Lawsuit Plaintiffs respectfully request that the Court clarify the Sale Order to expressly reference and include the protections of section 363(o) of the Bankruptcy Code.

### v.  The Complaint.

12. In connection with the prosecution of the Motion to Clarify the Sale Order, the Lawsuit Plaintiffs filed an adversary proceeding styled <u>Lawsuit Plaintiffs v. Flagship Resort Dev. Corp.</u> seeking an injunction pursuant section 105 of the Bankruptcy Code and Bankruptcy Rule 7001(7) along with an order to show cause for preliminary restraints (the "<u>Adversary Proceeding</u>"). Through the Adversary Proceeding, the Lawsuit Plaintiffs seek a limited and temporary injunction of the closing of the Sale Transaction to allow this Motion to be fully adjudicated.

13. To avoid undue delay or prejudice, the Lawsuit Plaintiffs are requesting that all matters be heard by the Court on an expedited basis.

14. In order to maintain the status quo in the interim and prevent any undue delay, the Lawsuit Plaintiffs have filed this request for temporary restraints.

## LEGAL ARGUMENT

**THE LAWSUIT PLAINTIFFS SATISFY THE TEST TO OBTAIN A TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF STAYING THE SALE CLOSING PENDING THE COURT'S ADJUDICATION OF THE LAWSUIT PLAINTIFFS' MOTION FOR CLARIFICATION/RECONSIDERATION**

1. Federal Rule of Civil Procedure 65, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7065, authorizes a court to issue a temporary restraining order to prevent irreparable harm to a movant, and to issue a preliminary injunction on notice to an adverse party to prevent irreparable harm to a movant. F.R.C.P. 65(a),(b); F.R.B.P. 7065(a).

2. Additionally, Bankruptcy Code section 105(a) authorizes courts to grant injunctive relief. *LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint (In re LTL Mgmt., LLC)*, 638 B.R. 291, 319 (Bankr. D.N.J. 2022) (citing *In re Philadelphia Newspapers, LLC*, 423 B.R. 98, 105 (E.D. Pa. 2010)).

3. Preliminary injunctions and temporary restraints are governed by the same standards generally applicable in non-bankruptcy contexts. *Ibid.*; *Pileggi v. Aichele*, 843 F.Supp. 2d 584, 592 (E.D. Pa. 2012).

4. To qualify for injunctive relief, a movant must demonstrate that (i) a likelihood of success on the merits exists; (ii) it will suffer irreparable harm if the injunction is denied; (iii) preliminary relief will not result in even greater harm to the nonmoving party; and (iv) the public interest favors such relief. *LTL*, *supra*, 638 B.R. at 319 (citing *Kos Pharmaceuticals Inc. v. Andrex Corp.*, 369 F.3d 700 (3d Cir. 2004)).

5. In applying this test, it is appropriate to use a "sliding-scale approach" with the principle that "the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa." *In re Revel AC, Inc.*, 802 F.3d 558, 569-70 (3d Cir. 2015).

6. Further, Federal Rule of Civil Procedure 65(a) and (b), made applicable to the within adversary proceeding by Federal Rule of Bankruptcy Procedure 7065, authorizes a court to issue a temporary restraining order without notice to an adverse party to prevent irreparable harm to a movant, and to issue a preliminary injunction on notice to an adverse party to prevent irreparable harm to a movant. F.R.C.P. 65(a)-(b).

7. A temporary restraining order is a specific form of preliminary injunctive relief that preserves "the status quo" between the parties while the merits of the case are explored through litigation. *J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 273 (3d Cir. 2002) (citations omitted).

8. The standard for granting a temporary restraining order is the same as that for issuing a preliminary injunction. *See Pileggi v. Aichele*, 843 F.Supp. 2d 584, 592 (E.D. Pa. 2012) (citing *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994)).

9. A temporary restraining order may be issued on an *ex parte* basis where "advance contact with the adversary would itself be likely to trigger irreparable injury." *Little Tor Auto Ctr. v. Exxon Co. USA*, 822 F. Supp. 141, 143 (S.D.N.Y. 1993). The purpose of an *ex parte* temporary restraining order is to preserve the status quo "for so long as is necessary to hold a hearing." *First Tech. Safety Sys. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993).

10. Here, the Lawsuit Plaintiffs seek entry of an Order to Show Cause imposing temporary restraints to prevent the Debtor from closing the sale in response to the commencement of this adversary proceeding, and then entry of a temporary injunction prohibiting the Debtor from closing the Sale until the Court has ruled on the Motion. For the following reasons, the Lawsuit Plaintiffs satisfy the elements required for such relief.

### A. The Lawsuit Plaintiffs Have a Reasonable Probability of Success on the Merits

11. The requirement of a "reasonable probability of success on the merits" does not require that the likelihood of winning be more likely than not; rather, the movant need show only a reasonable chance of success. *Revel*, *supra*, 802 F.3d at 568-69.

12. In the context of this application, success on the merits will be measured by whether the Court enters an Order clarifying that the Purchaser's rights under the Sale Order are subject to Bankruptcy Code section 363(o), or alternatively, modifying the Sale Order to so provide pursuant to Federal Rule of Civil Procedure 60(b).

13. Subsection (o) of Bankruptcy Code section 363 provides:

> Notwithstanding subsection (f), if a person purchases any interest in a consumer credit transaction that is subject to the Truth in Lending Act [15 USCS § 1601 et seq.] or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), and if such interest is purchased through a sale under this section, then such person shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such

>   person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

11 U.S.C. § 363(o).

14. When courts apply the Bankruptcy Code to the facts in a case, courts are bound to follow "the plain and unambiguous meaning of the words Congress chose." *In re Fed.-Mogul Glob.*, 684 F.3d 355, 377 (3d Cir. 2012).

15. Bankruptcy Code section 363(o) plainly and unambiguously provides that a buyer in a sale authorized under Section 363 acquires consumer credit transactions that are subject to the Truth in Lending Act and consumer credit contracts as defined in section 433.1 of title 16 of the Code of Federal Regulations (collectively "Qualifying Consumer Contracts") subject to all claims and defenses that would survive in a non-bankruptcy sale.

16. Subsection (f) is the only provision in Bankruptcy Code section 363 that allows a purchaser to acquire assets free and clear, and it is inapplicable to Qualifying Consumer Contracts. There is no authority in the Bankruptcy Code permitting the Purchaser to purchase from the Debtor any interest in Qualifying Consumer Contracts free and clear of all related claims and defenses.

17. As discussed in the Motion, the Sale Order is silent on the effect of Section 363(o) and therefore there is ample basis for the Court to clarify the Sale Order to expressly provide that the Purchaser takes all assets subject to Bankruptcy Code Section 363(o). Alternatively, as further discussed in the Sale Motion, to the extent the Court finds the Sale Order does not comply with Section 363(o) by virtue of direct contradiction, there ample basis for the Court to modify the Sale Order pursuant to Federal Rule of Civil Procedure 60(b)(1) or (6). Most significantly, if the Court finds that the any portion of the Sale Order contradicts Section 363(o), then the inclusion of such

portions in the Sale Order is by definition a mistake that should be corrected pursuant to Federal Rule of Civil Procedure 60(b)(1).

18. Accordingly, the Lawsuit Plaintiffs have at least a reasonable probability of obtaining a ruling that the Purchaser "remain[s] subject to all claims and defenses that are related to" any interests in Qualifying Consumer Contracts.

19. Therefore, the Lawsuit Plaintiffs satisfy the first element of the test for temporary restraints and a preliminary injunction.

### B. The Lawsuit Plaintiffs Will Suffer Irreparable Harm in the Absence of a Temporary Restraining Order and Injunctive Relief

20. Irreparable harm exists where a movant lacks an adequate remedy at law in the absence of injunctive relief. *See Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 139 (3d Cir. 2000)

21. To the extent the Court rules that the Lawsuit Plaintiffs' request for a finding that Section 363(o) governs the Purchaser's interests in any Qualifying Consumer Contracts acquired through the sale constitutes a request for modification of the Sale Order and denies the Lawsuit Plaintiffs' request to modify the Sale Order pursuant to Federal Rule of Civil Procedure 60(b), the Debtor and the Purchaser will be able to close the sale transaction before the Lawsuit Plaintiffs' can appeal such adverse determination to the District Court and obtain a ruling thereon. If the Debtor and the Purchaser close the sale before the District Court has an opportunity to adjudicate the Lawsuit Plaintiffs' appeal, the District Court may rule that the Lawsuit Plaintiffs' appeal is moot under Bankruptcy Code section 363(m),[2] thereby permanently terminating their ability to obtain a remedy at law on appeal. This permanent, irrevocable termination of the Lawsuit

---

[2] The Lawsuit Plaintiffs do not believe statutory mootness is applicable in this context but seek the protections of an injunction out of an abundance of caution.

Plaintiffs' ability to obtain a remedy at law on appeal constitutes irreparable harm. *Tanimura, supra*.

22. The closing of the Sale Transaction would alter the position of the various parties, including the Purchaser, and could directly impact that limited relief sought through the Motion to Clarify the Sale Order. As a result, the Lawsuit Plaintiffs, out of an abundance of caution, seek to maintain the status quo in order to avoid such imminent and irreparable harm, including the improper impairment of their rights under the Bankruptcy Code with respect to the Purchaser.

23. Accordingly, the Lawsuit Plaintiffs satisfy the second element of the test for temporary restraints and a preliminary injunction

### C. The Debtor Will Not Suffer Greater Harm if this Court Grants a Temporary Restraining Order and Injunction than the Lawsuit Plaintiffs Will Suffer Absent Such Relief

24. The Debtor will suffer only minimal harm if the Court grants Custom's request for a temporary restraining order and injunctive relief.

25. The requested preliminary injunction may not delay the sale at all, and at most will only delay consummation of the sale by approximately one month.

26. At the confirmation hearing, the Debtor's counsel indicated that the sale could not close until the parties obtained governmental approvals for transfers of business licenses, and the Debtor's counsel could not provide a firm date by which such approvals would be obtained. It is therefore possible that the requested preliminary injunction will not actually delay the sale closing at all.

27. Further, even if the Debtor and the Purchaser obtain all necessary approvals to close the sale within the next month, the requested preliminary injunction will impose only a short delay. The Lawsuit Plaintiffs have filed a motion requesting the Court to hear the Reconsideration Motion on shortened notice, and it is reasonable to anticipate the Reconsideration Motion will be

adjudicated in a matter of weeks. A stay of the sale through fourteen days following entry of an order adjudicating the Reconsideration Motion to allow the Lawsuit Plaintiffs an opportunity to seek a stay from the District Court in a potential appeal (at which point the Plaintiffs will be required to address security for a continued stay before the District Court) will therefore only result in a delay of approximately one month at most.

28. Any harm caused by this relatively brief delay in the sale closing is far outweighed by the harm to the Lawsuit Plaintiffs if the Lawsuit Plaintiffs' appellate rights are permanently cut off by a sale closing.

**D. Injunctive Relief Will Serve the Public Interest**

29. Congress enacted subsection (o) in furtherance of the public interest against allowing lenders to cut off consumer claims and defenses. *See In re Ditech Holding Corp.*, 606 B.R. 544, 589 (Bankr. S.D.N.Y. 2019) (discussing legislative history).

30. Therefore, staying the sale to allow the Court to clarify that the Purchaser will acquire any interests in Qualifying Consumer Contracts will further the Congressionally recognized public interest in protecting consumers.

**E. Request to Fix the Amount of Security Required for Injunctive Relief**

31. Federal Rule of Civil Procedure 65(c) provides that "the court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." F.R.C.P. 65(c).

32. The purpose of requiring a movant to provide security is to assure an enjoined party that it may readily collect any damages sustained to the extent the enjoined party is

wrongfully enjoined. *See AIG Europe S.A. v. Sears Holding Corp. (In re Sears Holding Corp.)*, 659 B.R. 236, 254 (Bankr. S.D.N.Y. 2024).

33. A court's discretion in setting the amount of the bond should be guided by "a case-specific analysis that accounts for the factual circumstances of the parties, the nature of the case and competing harms, and the scope and potential impact of the injunction …." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 392 (3d Cir. 2021).

34. In this case, for the reasons set forth in Section C above, the requested preliminary injunction may not delay the sale at all, and at most will only delay consummation of the sale by approximately one month.

35. Pursuant to the Settlement Term Sheet executed by, among others, the Debtor and managers of the Purchaser (then the stalking horse bidder), since August 17, 2025 the Purchaser has been (i) funding "all costs and expenses incurred by the Debtor's estate not contemplated in the Amended DIP Budget, including but not limited to operational costs, US Trustee fees, and interest and fees under the DIP Facility, and (ii) realiz[ing] any benefit from the Debtor's operations." *See* ECF 268, Settlement Term Sheet at ¶ 6. Thus, any delay of consummation of the sale will not prevent the Purchaser from realizing profits from the operations of the Debtor's business and will not impose any additional costs on the Debtor.

36. In light of the absence of any financial harm to the Debtor from a brief stay of the sale closing, the Lawsuit Plaintiffs respectfully request the Court to exercise its discretion to fix a security bond in the amount of $500 as a condition for issuance of the requested temporary injunction.

## CONCLUSION

37. For the foregoing reasons, the Lawsuit Plaintiffs respectfully request that the Court grant their request for entry of the Order to Show Cause with Temporary Restraints submitted herewith, and after notice and a hearing, grant the requested temporary injunctive relief, and such other relief as is just.

Date: September 26, 2025

Respectfully submitted,

**WENOKUR RIORDAN, PLLC**
s/*Faye C. Rasch*
Faye C. Rasch, NJSB #4136875
Attorneys for Lawsuit Plaintiffs